UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 09-22967-CIV-HUCK/O'SULLIVAN

EXPORTACIONES TEXTILES, S.A. DE C.V.,

    Plaintiff,

v.

ORANGE CLOTHING CO.,
SCOTT H. DEUTSCH, and
ANDY WORTMANN,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

This cause is before the Court on Defendants Orange Clothing Co. and Scott H. Deutsch's Motion to Dismiss Amended Complaint (D.E. #10). Plaintiff, Exportaciones Textiles, S.A. DE C.V. ("ET"), has brought claims for account stated (Count I), breach of contract (Count II), and fraud (Counts III and IV). Defendants Orange and Deutsch[1] move to dismiss Counts I, III, and IV pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons below, the Court denies the motion as to Count I, grants the motion as to Counts III and IV, and gives ET leave to amend its complaint to add claims for breach of contract.

**I.**     **Background[2]**

ET is a clothing manufacturer based in El Salvador. Orange is an importer, marketer, designer, and distributor of men's apparel based in Miami. Scott Deutsch is an employee of Orange. Andy Wortmann is a former employee of Orange. ET and Orange engaged in a series of transactions in 2005 and 2006 in which Orange purchased tee shirts from ET for resale to Wal-Mart. Orange purchased the tee shirts in three separate batches or "programs": Program 1 ("OPP 1 Tees"); Program 2 ("Better Tees"); and Program 3 ("Muscle/Tank Tees").

---

[1] Defendant Andy Wortmann was not served until February 27, 2010 and has not yet filed a response to the Amended Complaint.

[2] The facts in this section are derived from the allegations in the Amended Complaint (D.E. #8), which the Court accepts as true for the purpose of ruling on Defendants' Motion to Dismiss. *See Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994).

### A. Program 1 Tee Shirts

Orange placed purchase orders for the Program 1 tee shirts in October 2005. ET shipped the Program 1 shirts to Orange in January 2006. Orange accepted delivery and paid the full amount due.

### B. Program 2 Tee Shirts

Orange placed purchase orders for the Program 2 tee shirts in December 2005. ET shipped the Program 2 shirts to Orange in February 2006. The total of all Program 2 invoices was $483,203.20. Before Orange made any payments, however, Defendant Wortmann contacted ET and stated that some of the Program 1 shirts were defective and unacceptable to Wal-Mart, and that Orange was forced to sell them to another buyer for $1.00 per shirt. Defendant Deutsch then contacted ET and requested a discount on the Program 2 shirts. ET agreed to give Orange a discount and credited Orange's invoice for the Program 2 shirts by $203,568.40. After the discount, the balance due was $279,639.80. Orange made payments totaling $136,349.72, leaving a balance due of $143,290.08.

In Count I of the Amended Complaint, ET brings a claim for account stated, seeking the unpaid balance of $143,290.08 due on the Program 2 shirts. In Count III, ET brings a claim for fraud. ET alleges that Defendants' representations as to the Program 1 shirts were false and were made to induce ET to give Orange a discount on the Program 2 shirts. ET alleges that it relied on Defendants' misrepresentations in agreeing to give Orange a discount and suffered damages in the amount of the discount.

### C. Program 3 Tee Shirts

Orange placed purchase orders for the Program 3 tee shirts in January 2006. ET shipped the Program 3 shirts to Orange in March and April 2006. The total of all Program 3 invoices was $511,418.90. Again, however, before Orange made any payments, Wortmann contacted ET and stated that some of the Program 3 shirts were defective. Deutsch then contacted ET and stated that Wal-Mart had canceled the program due to product test failures and late delivery. Once again, ET agreed to accept much less than the amount invoiced. Orange made payments totaling $203,065.60.

In Count IV, ET brings another claim for fraud. Similar to Count III, ET alleges that Defendants' representations as to the Program 3 shirts were false and were made to induce ET to accept much less than the amount invoiced. Again, ET alleges that it relied on Defendants' misrepresentations and suffered damages in the amount of the discount.

## II.  Analysis

### A.  Account Stated Claim

Defendants Orange and Deutsch argue that ET's claim for account stated must be dismissed because ET's own allegations reflect a price dispute.  Defendants point out that ET believes it is entitled to the amount of the discount on the Program 2 shirts because Defendants allegedly obtained the discount by making false representations about defects in the Program 1 shirts.  According to Defendants, because there is a dispute as to whether ET is entitled to recover the amount of the discount, there is a dispute as to the proper balance owed for the Program 2 shirts, and ET cannot state a claim for account stated.

"For an account stated to exist as a matter of law, there must be an agreement between the parties that a certain balance is correct and due and an express or implicit promise to pay this balance."  *Merrill-Stevens Dry Dock Co. v. Corniche Express*, 400 So. 2d 1286, 1286 (Fla. Dist. Ct. App. 1981).  ET's allegations meet this requirement.  ET alleges that the parties agreed to the balance due for the Program 2 tee shirts and that Orange did not object to statements rendered by ET.  Although the propriety of the discount is disputed, according to ET's allegations, there is no dispute that Orange owes ET at least the unpaid balance of $143,390.08 for the Program 2 shirts.  Therefore, Count I states a claim for account stated.

### B.  Fraud Claims

Defendants Orange and Deutsch also argue that ET's fraud claims in Counts III and IV are barred by the economic loss rule.  ET responds that the economic loss rule does not bar claims for fraud in the inducement.  In *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238 (Fla. 1997), the Florida Supreme Court clarified that the economic loss rule does not bar claims for fraudulent inducement.  In doing so, however, the Supreme Court distinguished between fraud in the inducement and other kinds of fraud:

> The distinction between fraud in the inducement and other kinds of fraud is the same as the distinction drawn by a New Jersey federal district court between fraud extraneous to the contract and fraud interwoven with the breach of contract.  With respect to the latter kind of fraud, the misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort.

*Id.* at 1240 (adopting and quoting *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 545 (Mich. 1995)).

3

Judge Moreno relied on *HTP* in rejecting fraud claims similar to ET's claims in this case. *See Thunderwave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562 (S.D. Fla. 1997).  In *Thunderwave*, the plaintiff alleged that the defendant made a series of false statements that induced the plaintiff to, among other things, "consent to modifications to pre-existing agreements on terms more favorable to" the defendant.  *Id.* at 1567.  Judge Moreno concluded that the plaintiff did not raise allegations of fraudulent inducement, and the alleged fraud therefore was "fraud 'interwoven with the breach of contract' and [was] barred by the economic loss rule."  *Id.* at 1568.

The Court agrees with the result in *Thunderwave* and finds that the economic loss rule bars ET from bringing claims for fraud.  As the Florida Supreme Court explained in *HTP*, "[f]raudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract."  *HTP*, 685 So. 2d at 1239.  Thus, "[w]here the facts surrounding a breach of contract action are indistinguishable from an alleged tort, and where the alleged tort does not cause harm distinct from that caused by the breach of contract, a plaintiff is barred from bringing a separate tort action."  *Eye Care Int'l, Inc. v. Underhill*, 92 F. Supp. 2d 1310, 1315 (M.D. Fla. 2000).  Although ET has not brought claims for breach of contract, ET's fraud claims appear to be "interwoven" with contract claims that it could bring.  If ET's allegations are true, then ET has claims for breach of contract based on Orange's misrepresentation that the tee shirts were defective and its refusal to pay the full contract price. The facts necessary to prove that Orange breached the parties' agreements are the same facts necessary to prove ET's fraud claims.  In addition, ET's potential recovery under either type of claim—fraud or breach of contract—would be the amount of the discount ET gave from the original invoiced amounts.  The identical proof and damages indicate that Orange's fraud was "interwoven" with its breach of the parties' contract.  Therefore, the economic loss rule applies to bar ET's fraud claims.

In addition, there is good reason to distinguish between fraud in the inducement of a contract and fraud in the inducement of a modification to a pre-existing agreement.  In *HTP*, the Florida Supreme Court explained the reasoning behind the exception to the economic loss rule for fraud in the inducement:

> Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freely—which normally would constitute grounds for invoking the economic loss doctrine—but where in fact the ability of one party to negotiate fair terms and

4

> make an informed decision is undermined by the other party's fraudulent behavior.

*HTP*, 685 So. 2d at 1240 (adopting and quoting *Huron Tool*, 532 N.W.2d at 545). A concern with fraud in the inducement is that the party that committed fraud deprived the other party of the opportunity to negotiate freely. In the absence of fraud, the plaintiff may have been able to negotiate a better deal or may not have entered into the agreement in the first place. The fraud is external to the contract, and the plaintiff's remedies should not be limited to what is provided by the contract. Fraud in the inducement of a modification, however, presents a different situation because there is no mystery as to what type of contract the plaintiff would have negotiated in the absence of fraud: the original contract. In this case, by holding Orange to the parties' original agreements, ET would not be disadvantaged by Orange's alleged fraud. Accordingly, the Court finds that ET's fraud claims are barred by the economic loss rule.

As noted above, ET's Amended Complaint does not bring claims for breach of contract based on Defendants' alleged misrepresentations and subsequent demands for discounts on the amounts invoiced for the Program 2 and Program 3 shirts. In light of the Court's finding that the economic loss rule requires ET to bring claims for breach of contract instead of fraud, the Court believes ET should be given leave to amend its complaint to bring claims for breach of contract.

### III.     Conclusion

For these reasons, the Court denies Defendants' Motion to Dismiss as to Count I, and grants the Motion to Dismiss as to Counts III and IV. ET is given leave until Friday, April 9, 2010 to file an amended complaint to include claims for breach of contract.

DONE AND ORDERED in Chambers, Miami, Florida, March 26, 2010.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
All Counsel of Record